UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LATIN ENTERTAINMENT,<br><br>   Plaintiff,<br><br>v.<br><br>WJMN-FM,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 04-10216-RGS |

**DEFENDANT'S ANSWER**

The Defendant, WJMN-FM ("WJMN"), hereby answers the corresponding numbered paragraphs of the Complaint of the Plaintiff, Latin Entertainment, as follows:

**Jurisdictional Statement**

1. WJMN admits that the Plaintiff has styled this as a diversity action pursuant to 28 U.S.C., § 1332.  WJMN is without information sufficient to permit it to admit or deny whether the Plaintiff, Latin Entertainment, is an unincorporated business entity located in Connecticut.  WJMN admits that Latin Entertainment has brought this suit and named it as a Defendant, and admits that it is located in and does business in Massachusetts.  The Plaintiff denies that the venue is appropriate as alleged by the Plaintiff, and denies that a substantial part of the events giving rise to the Plaintiff's claim occurred on May 10, 2003 at the Worcester Centrum.  The Plaintiff admits that the Worcester Centrum is located in this judicial district.

**Parties**

2.    WJMN is without information sufficient to permit it to admit or deny whether Latin Entertainment is an unincorporated Connecticut business entity located in Wolcott, Connecticut, and that it is owned by Evaristo Pabon and Milton Rodriguez. WJMN is without information sufficient to admit or deny whether Latin Entertainment generally promotes live concerts performed by Latin and urban bands and performers.

3.    WJMN admits that it is a radio station located in Boston, Massachusetts and that it broadcasts to Boston and throughout the eastern part of Massachusetts. WJMN denies that it is the only station playing urban-oriented music including (hip-hop) whose signal is heard in both Boston and Worcester listening areas.

**Statement of Facts**

4.    WJMN is without information sufficient to admit or deny that in the past nine years, Latin Entertainment has successfully produced and promoted over 100 Latin concerts in various venues throughout the eastern United States.

5.    WJMN admits that in the early spring of 2003, Pabon decided to produce a hip-hop concert at the Worcester Centrum (the "Centrum"). The allegation that the Worcester Centrum is "one of the largest venues in the United States" is vague and ambiguous, and on that basis, WJMN denies that allegation. WJMN is without information sufficient to permit it to admit or deny whether Pabon hired two firms KGB and Colours Management & Marketing, Inc. to book performers for the concert, negotiate their contracts, and perform necessary advance work.

6.    WJMN is without information sufficient to permit it to admit or deny that performers booked for the Latin Entertainment concert at the Worcester Centrum agreed not to perform again in the same market for thirty (30) days prior to or after the Latin Entertainment

Centrum concert without Latin Entertainment's written consent. WJMN denies that there are "industry customs" pursuant to which performers do not perform again in the same market for thirty (30) days prior to or after a particular concert event.

7. WJMN denies that in the concert industry, Boston and Worcester, Massachusetts are considered to be part of the same market.

8. WJMN is without information sufficient to permit it to admit or deny that on April 4, 2003, Latin Entertainment and the Centrum signed an agreement allowing Latin Entertainment to stage a hip-hop concert on May 10, 2003.

9. WJMN is without information sufficient to permit it to admit or deny that Latin Entertainment paid the Centrum a non-refundable rent, a deposit of $10,000, obtained the required insurance coverage and booked the artists.

10. WJMN is without information sufficient to permit it to admit or deny that Pabon knew from past experience that concerts are successful only when well-advertised and fully promoted, or that Pabon asked the Centrum for suggestions regarding advertising and promotion.

11. WJMN is without information to permit it to admit or deny that the Centrum recommended that Latin Entertainment advertise primarily on WJMN since it was the only station that would reach Latin Entertainment's entire target audience in the Boston and Worcester markets.

12. WJMN admits that Clear Channel Communications ("Clear Channel") is a Texas corporation with its headquarters located at 200 East Passe Road, San Antonio, Texas 78209. WJMN admits that Clear Channel owns or operates approximately 1,184 U.S. radio stations and 34 U.S. television stations. WJMN admits that Clear Channel operates businesses that include radio broadcasting of which WJMN is a part, outdoor advertising, and live entertainment,

including ownership and operation of live venues through Clear Channel Entertainment. WJMN admits that it is owned by Clear Channel Communications.

13. WJMN admits that Pabon knew that Clear Channel had already scheduled a hip-hop concert in Boston at the end of June. WJMN denies that Pabon was concerned that Latin Entertainment's concert might not be adequately publicized and promoted by WJMN.

14. WJMN admits that Pabon contacted it on or about April 7, 2003 and that he spoke with Christian Fitzpatrick regarding his wish to advertise the concert on WJMN. WJMN denies that Pabon told Fitzpatrick that he would advertise the concert on WJMN only if he was assured that neither WJMN or Clear Channel Entertainment were producing a competing event within thirty (30) days of May 10, 2003 and only if WJMN would provide significant promotional support for the concert. Further answering, WJMN states that Fitzpatrick informed Pabon that although Clear Channel Entertainment's concert was currently scheduled for the end of June, the date was subject to change without notice, that because of the proximity of Latin Entertainment's event to the Clear Channel event, WJMN would not provide substantial promotional support, and that under the circumstances, WJMN could only deliver paid advertising services and certain limited additional promotional support. Further answering, WJMN states that Pabon, with full knowledge of these limitations, agreed to advertise Latin Entertainment's concert on WJMN.

15. WJMN is without information sufficient to permit it to admit or deny that Fitzpatrick did not get back to Pabon until April 10, 2003. WJMN admits that Fitzpatrick told Pabon that the reason for any delay was to obtain confirmation from his superiors that WJMN knew of no upcoming competing concerts, and that it could provide limited promotional support. Further answering, WJMN states that Fitzpatrick did not obtain from his superiors a guarantee that the date for the WJMN concert currently set for the end of June would not be moved, or that

WJMN would promote the Latin Entertainment concert to the same extent that it intended to promote its own event nor did he represent to Pabon that this would be the case.

16.     WJMN denies that Fitzpatrick then faxed a proposal for advertising and promotional assistance at a total cost of $20,500 to Pabon.  Further answering, WJMN admits that Fitzpatrick faxed a printout of a PowerPoint slide presentation to Pabon, which included a $20,500 proposed advertising budget, and it admits that Fitzpatrick promised that one of WJMN's morning show personalities would host the Latin Entertainment concert.

17.     WJMN denies that Pabon advised Fitzpatrick that the $20,500 was approximately 80% of Latin Entertainment's advertising budget for the concert.  WJMN admits that Pabon accepted Fitzpatrick's proposal, but denies that he did so based on Fitzpatrick's representations and promises.  WJMN admits that Fitzpatrick promised Pabon that WJMN would provide a marketing campaign for the proposed concert, that it had experience in promoting its own concerts, and that WJMN's concerts were always very successful.  WJMN denies that Fitzpatrick said that the radio station knew the type of campaign that needed to be done to successfully promote the concert.  WJMN denies that Fitzpatrick told Pabon that the radio station would do all that it could do to make the concert a success.  Further answering, WJMN states that Fitzpatrick told Pabon that WJMN would deliver all of the advertising it had promised, and the specified promotional support, but at no time did Fitzpatrick assure Pabon or lead Pabon to believe that a paid advertising campaign on WJMN was all that was necessary to make the concert a success.  WJMN denies that Fitzpatrick told Pabon that the concert would be good not only for Pabon but also for WJMN, but admits that he promised that WJMN would give, where appropriate, promotional support above and beyond the purchased radio spots.  WJMN admits that during this conversation Fitzpatrick promised Pabon that the radio station's morning show

personalities would host the event and that the radio station would have their banners on the stage.

18.     WJMN admits that it would not extend credit Latin Entertainment, and admits that Pabon met Fitzpatrick at the Worcester Centrum and delivered a $20,500 bank check to him. WJMN denies that at that meeting Fitzpatrick stated that he did not yet have the advertising contract which would outline the specific times Latin Entertainment's concert ads would run and the details of the promotions with him, but would fax it to Latin Entertainment the following morning.

19.     WJMN admits that Latin Entertainment never received a contract showing when the ads would run, but denies that Latin Entertainment never received a statement from WJMN providing the details of the promotion from WJMN.  Further answering, WJMN states that it could not provide a specific schedule for the running of the purchased spots that far in advance, since the scheduling of the particular spots is typically not completed until closer to their specific air time.  The faxed PowerPoint slides provided to Pabon earlier did detail the promotion that WJMN would provide.  WJMN denies that Pabon requested a written contract, but admits that he requested documents showing when the scheduled spots would run.  WJMN admits that Pabon never received a written contract, but denies that one was ever promised.  WJMN admits that it did provide a handwritten schedule showing when the promotional spots were supposed to run.

20.     WJMN is without information sufficient to permit it to admit or deny whether Latin Entertainment incurred pre-production expenses, which included both a production of ads and the advertising contract with WJMN.

21.     WJMN is without information to permit it to admit or deny that over the next several days Pabon learned from listeners in Boston that the WJMN ads were not being run as

B0352565v1

promised. Further answering, WJMN states that the WJMN ads were run as promised, as scheduled. WJMN admits that on or about April 22, 2003, Pabon complained to WJMN, and that he received a handwritten statement from WJMN detailing the times when the ads had run. Further answering, WJMN does not consider that handwritten statement to have been unverified.

22. WJMN denies that on April 23, 2003, there was a conference call between Pabon, Fitzpatrick, WJMN's General Sales Manager, Jake Karger, and its Promotions Director, Shaileen Renshaw. Further answering, WJMN states that Jake Karger is not its General Sales Manager. WJMN denies that Pabon complained that he had no contract, that the ads were not being played as promised, that the ads that did run failed to mention that tickets could be purchased via telephone, and that Latin Entertainment was not receiving promised promotional support. WJMN admits that during telephone calls addressing Latin Entertainment's concerns in late April, WJMN's personnel did state, correctly, that the ads were running as promised, and that the promised promotional support was being provided. WJMN admits that it added an additional commitment of one hundred 60-second spots for the Latin Entertainment concert at no additional cost. Further answering, it states that it did provide those one hundred additional 60-second spots at no cost to Latin Entertainment.

23. WJMN is without information sufficient to allow it to permit or deny that on April 24, 2003, Pabon learned from the WJMN website that WJMN was sponsoring its own concert in Boston on June 2, 2003, featuring three of the headlined performers that Latin Entertainment had engaged for the Centrum concert. Further answering, WJMN states that its concert scheduled for the end of June was moved to June 2, 2003, as a result of artists' scheduling issues which could not be avoided, and also states that three of the performers for WJMN's concert were also performers scheduled to appear for the Latin Entertainment concert.

Further answering, WJMN states that none of the three performers who were scheduled to also appear at the Latin Entertainment concert, indicated that they had any contractual arrangement with Latin Entertainment which would prohibit them from performing at the Latin Entertainment concert and also at the WJMN concert on June 2. WJMN is without information sufficient to allow it to permit it to admit or deny that Pabon immediately called WJMN; it denies that no station personnel would speak with him, or that no station personnel called him back.

24. WJMN admits that on or about April 24, 2003, it began to heavily advertise and promote its June 2 concert during its broadcasts. WJMN denies that in contrast the advertisements for the Latin Entertainment concert were shorter, less frequent and lacked any promotional support. Further answering, WJMN states that at no time did it agree to tailor its promotion of its own events relative to the frequency or number of spots provided to Latin Entertainment, and further answering states that on the contrary, Pabon was aware that this station intended to heavily promote its own concert, and would do so regardless of whether Pabon chose to advertise with it or not, and irrespective of the number of length, or duration of the Latin Entertainment spots which he elected to purchase. WJMN denies that the scheduling of the June 2 WJMN concert was an explicit breach of the promises made to Pabon by Fitzpatrick and other WJMN personnel at the April 23 meeting.

25. WJMN admits that on April 25, 2003, Latin Entertainment's counsel sent a letter to WJMN outlining is position, that there was no official response from WJMN, and that it continued to run some Latin Entertainment ads until April 28, 2003.

26. WJMN is without information sufficient to permit it to admit or deny that by April 29, 2003 sales for the Centrum concert were only $50,000, or that Latin Entertainment as a result had no choice but to cancel the concert. WJMN denies that it failed to deliver the promotional support and advertising it had promised, or that its delivery of the promised promotional and advertising support was in any way affected by the rescheduling of the WJMN/Clear Channel concert to June 2. WJMN denies that its delivery of the promised promotional support and advertising services was in any way deficient or in any way responsible for the Plaintiff's ticket sales for being far less than anticipated. WJMN denies that the trust necessary between the Plaintiff and WJMN had deteriorated to the point where the Plaintiff had no hope of successfully promoting its event and recouping its investment. WJMN denies that under ordinary circumstances if ticket sales for a concert are less than anticipated, Latin Entertainment would ordinarily turn to its primary advertiser to ask for help. Further answering, WJMN states that in this particular circumstance, Latin Entertainment did turn to WJMN and request help. Further answering, WJMN states that the station provided additional help in the form of a significant volume of free promotional spots. WJMN denies that it was directly competing with the Plaintiff by promoting its concert, and further answering denies that the Plaintiff had "no other viable options other than to cancel the event".

27. WJMN denies that it is an industry practice to submit notarized invoices. It admits that it did submit unnotarized invoices to Latin Entertainment. Further answering, WJMN states that at no time did Latin Entertainment request notarized invoices, and that if it had, those invoices would have been provided. WJMN admits that on May 9, 2003, it refunded $7,350 to Latin Entertainment, and denies that it did so without explanation. Further answering, WJMN states that the $7,350 refund was for unused advertising spots which could no longer be

run as a result of Latin Entertainment's decision to cancel its event. Further answering, WJMN states that typically, it would not refund paid advertising time to a client that cancelled with less than two weeks notice to WJMN, but that under these circumstances, and in an effort to address the Plaintiff's complaints, WJMN voluntarily agreed to provide this refund.

<b><u>Count I – Fraudulent Misrepresentation</u></b>

28. Defendant incorporates by reference its answers to the allegations contained in paragraphs 1 through 26 of the Complaint.

29. WJMN denies the allegations set forth in paragraph 29 of the Complaint.

30. WJMN denies the allegations set forth in paragraph 30 of the Complaint.

31. WJMN denies the allegations set forth in paragraph 31 of the Complaint.

32. WJMN denies the allegations set forth in paragraph 32 of the Complaint.

33. WJMN denies the allegations set forth in paragraph 33 of the Complaint.

34. WJMN denies the allegations set forth in paragraph 34 of the Complaint.

35. WJMN denies the allegations set forth in paragraph 35 of the Complaint.

36. WJMN denies the allegations set forth in paragraph 36 of the Complaint.

<b><u>Count II – Breach of Contract</u></b>

37. Defendant incorporates by reference its answers to the allegations contained in paragraphs 1 through 35 of the Complaint.

38. WJMN denies the allegations set forth in paragraph 38 of the Complaint.

39. WJMN denies the allegations set forth in paragraph 39 of the Complaint.

40. WJMN denies the allegations set forth in paragraph 40 of the Complaint.

41. WJMN denies the allegations set forth in paragraph 41 of the Complaint.

42. WJMN denies the allegations set forth in paragraph 42 of the Complaint.

### Count III – Violation of M.G.L. c. 93A, §§ 2 and 11

43.     Defendant incorporates by reference its answers to the allegations contained in paragraphs 1 through 41 of the Complaint.

44.     WJMN denies the allegations set forth in paragraph 44 of the Complaint.

45.     WJMN denies the allegations set forth in paragraph 45 of the Complaint.

46.     WJMN denies the allegations set forth in paragraph 46 of the Complaint.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff fails to state a claim for which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred by the Doctrine of Estoppel.

### Third Affirmative Defense

Plaintiff's claims are barred by the Doctrine of Laches.

### Fourth Affirmative Defense

Plaintiff's claims are barred by the Statute of Frauds.

### Fifth Affirmative Defense

The Plaintiff has waived any and all claims against WJMN arising out of or related to the transactions at issue in this action.

### Sixth Affirmative Defense

Plaintiff has released WJMN from any and all claims arising out of or related to the transactions at issue in this action.

### Seventh Affirmative Defense

Plaintiff's losses, if any exist, are the result of the conduct of individuals or entities over whom WJMN had no control and for whom WJMN is not responsible.

**Eighth Affirmative Defense**

Plaintiff's claims are barred, or any damages must be reduced on account of, the Plaintiff's contributory negligence.

**Ninth Affirmative Defense**

WJMN states that Latin Entertainment is a sophisticated concert promotion entity with extensive knowledge of the concert promotion industry and the market in which it sought to produce this particular event. Latin Entertainment was aware that hip-hop concerts of the type it planned are typically difficult to promote, and require a substantial investment of advertising and promotional support, far and above the advertising and promotion budget which it allocated to this project, and far in excess of the $20,500 which it elected to spend with WJMN-FM. It made its decision to proceed with the concert and promote it through WJMN to the level that it did based upon its own independent decisions and not based upon any representations or statements by WJMN or its personnel.

**Tenth Affirmative Defense**

The Plaintiff is barred by its unclean hands from receiving the relief it requests.

**Eleventh Affirmative Defense**

The Complaint should be dismissed and/or the relief requested denied because the Plaintiff has failed to mitigate its alleged damages.

**Twelfth Affirmative Defense**

The Plaintiff's claims are barred by the doctrine of Accord and Satisfaction.

B0352565v1

**Thirteenth Affirmative Defense**

Plaintiff's claims are barred by its failure to plead fraud with particularity.

>Respectfully submitted,
>
>WJMN-FM
>Attorneys for Defendant
>
>/s/ Mark S. Resnick
>Mark S. Resnick, BBO #559885
>mresnick@ghlaw.com
>Gadsby Hannah LLP
>225 Franklin Street
>Boston, MA 02110
>(617) 345-7000

Certificate of Service

I, Mark S. Resnick, hereby certify that on the 12th day of May, 2004, I caused notice of the foregoing Answer, to be made upon all counsel of record by electronically filing with the Court and by depositing a courtesy copy of the same into the U.S. Mail, postage prepaid, addressed as follows:

Mark H. Bluver, Esquire
Shatz, Schwartz & Fentin, P.C.
1441 Main Street
Springfield, MA 01103

>/s/ Mark S. Resnick
>Mark S. Resnick

B0352565v1